UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.

MARSHALL MANLEY

    Plaintiff,

v.

GEROVA FINANCIAL GROUP, LTD,
a Cayman Islands corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiffs, Marshall Manley ("Manley" or "Consultant"), by and through undersigned counsel, sues Defendant, Gerova Financial Group, Ltd. a/k/a Gerova Financial Group, Inc. ("Gerova" or "Defendant"), a Cayman Islands corporation, and states as follows:

### JURISDICTION AND VENUE

1. This is an action for breach of contract seeking damages in excess of $75,000.00, exclusive of interest, attorneys' fees and costs.

2. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys fees, and there is complete diversity of citizenship between the parties.

3. Venue is proper in the United States District Court for the Southern District of Florida, because, among other things, the events or omissions giving rise to the claims set forth below occurred in Palm Beach County, Florida.

## THE PARTIES

4. At all times material, Manley was and is a resident of Palm Beach County, Florida, and is *sui juris*.

5. The Defendant, Gerova, is a Cayman Islands corporation having its principal place of business at Cumberland House, 5th Floor, 1 Victoria Street, Hamilton, HM 11, Bermuda.

## GENERAL ALLEGATIONS

6. On July 26, 2010, Gerova entered into a Consulting Agreement (the "Agreement") with Manley and Marseilles Capital, LLC, a true and correct copy of which is attached as ***Exhibit A***.

7. On October 11, 2011, Marseilles Capital, LLC assigned all of its rights, title, and interest in the Agreement to Manley. A true and correct copy of the Assignment Agreement is attached as ***Exhibit B***.

8. Pursuant to the Agreement, Gerova was obligated to "issue to the Consultant an aggregate of forty-seven thousand eighty (sic) hundred seventy nine (47,879) ordinary shares of the Company...." ***Exhibit A***.

9. Gerova failed to issue the ordinary shares it was required to issue under the Agreement.

10. Gerova was also obligated, no later than July 29, 2010, to "(i) file with the Securities and Exchange Commission, and cause to become effective, a Form S-8 registration statement to register for immediate public resale all of the Shares; and (ii) cause a stock certificate evidencing the Shares to be issued in the name of the Consultant to any affiliated entity of the Consultant designated by him." ***Exhibit A***.

11. Gerova failed to file the Form S-8 with the Securities and Exchange Commission,

as required by the Agreement.

12. Gerova failed to issue a stock certificate evidencing the Shares to be issued in the name of the Consultant, as required by the Agreement.

13. The Agreement further provides that:

> [i]n the event that by September 7, 2010, the Consultant shall *not* have received a minimum of $225,000 in cash from one or more sales of the Shares (net of any selling commissions), the Company shall, by a date which shall not be later than September 10, 2010, either:
>
> (i) pay to the Consultant in cash the difference between (A) $225,000, and (B) the actual amount(s) received in cash by Consultant from such sale(s) of the Shares; or
>
> (ii) if the Consultant has elected not to sell all or any portion of the Shares, offer to repurchase any unsold Shares for a purchase price of $4.70 per share.

*Exhibit A.*

14. The Consultant never received any proceeds from the sale of the Shares that were to have been issued under the Agreement, nor did Gerova offer to purchase the Shares from Consultant as required by the Agreement.

15. All conditions precedent to the commencement of this litigation have occurred or have been waived.

## COUNT I
## Breach of Contract

16. The Consultant incorporates paragraphs 1 through 16 above as though fully set forth herein.

17. This is an action for damages against Gerova for breach of contract.

18. The Consultant has performed its obligations under the Agreement.

19. Gerova has not performed its obligations under the Agreement despite the fact that all conditions precedent to the performance have been performed.

ROSENBAUM MOLENGARDEN JANSSEN & SIRACUSA PLLC * 250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900 * Facsimile (561) 820-2542

20.  Gerova did not issue the Shares required by the Agreement or comply with any of its subsequent obligations under the Agreement.

21.  Gerova's failure to perform its obligations under the Agreement has caused Manley to suffer damages.

WHEREFORE, Plaintiff, Marshall Manley, respectfully requests that this Court enter judgment in his favor and award him damages for Gerova's breach of the Agreement, and any other relief the Court deems just and proper, with costs of the action and attorneys fees as permitted by law.

Respectfully submitted,

ROSENBAUM MOLLENGARDEN
JANSSEN & SIRACUSA, PLLC
250 Australian Avenue South, Suite 500
One Clearlake Centre
West Palm Beach, Florida 33401
(561)653-2900; Fax (561)820-2542
Counsel for Plaintiff

By: _____
DANIEL S. ROSENBAUM
Florida Bar No. 306037

21H8652

# EXHIBIT "A"

 **GEROVA Financial Group, Ltd.**

Cumberland House, 5th floor
1 Victoria Street
Hamilton, HM 11
Bermuda
(441) 296-7777

July 26, 2010

Mr. Marshall Manley
2475 Marseilles Drive
Palm Beach Gardens, FL 33410

      Re:    **Consulting Agreement**

Dear Mr. Manley:

This letter agreement ("**Agreement**") will serve to set forth the terms and conditions whereby **GEROVA Financial Group, Inc.**, a Cayman Islands corporation (the "**Company**") hereby agrees to engage the services of Marshall Manley ("**Manley**") and his affiliate Marseilles Capital LLC ("**Marseilles**" and with Manley, each, the "**Consultant**") as a consultant to the Company to provide consulting services to the Company described below.

    1.    **CONSULTING SERVICES.** In accordance with the provisions of Section 5h of the separation agreement and release, dated April 8, 2010 between the Company and Manley (the "**Separation Agreement**"), the Company hereby retains the services of Consultant to provide counseling and advise to the Company, upon request of the Company, in connection with potential insurance company acquisitions for the Company or its affiliated entities (collectively, "**Target Businesses**"). The Consultant agrees that during the term of this agreement, he and his affiliate shall provide such services (the "**Consulting Services**"); subject at all times to the other provisions of this Section 1. In such connection, the Company and the Consultant mutually agree and understand that the Consultant will not be obligated to either (a) source any potential Target Businesses, or (b) devote any specific amount of his or its time or effort in rendering such Consulting Services to the Company; it being expressly understood and agreed that, the Consultant shall only devote such of his and its time and effort to the Company that Consultant deems advisable under the circumstances and which does not interfere, in any respect, with the other activities of the Consultant.

    2.    **CONSULTING FEE.**

    (a)    In consideration for the Consultant making himself available to provide Consulting Services to the Company simultaneous with the execution of this Agreement, the Company agrees to issue to the Consultant an aggregate of forty-seven thousand eighty hundred seventy nine (47,879) ordinary shares of the Company, $0.0001 par value per share (the "**Shares**"). The aggregate number of the Shares was calculated based upon dividing (i) $225,000, by (ii) the average of the closing bid prices ($5.94) for the five trading days July 20 through July 26 (inclusive), representing 37,879 shares, and adding to such amount an additional 10,000 shares (the "**Additional Shares**").

    (b)    In such connection, the Consultant recognizes that such Shares have not been registered under the Securities Act of 1933, as amended (the "**Act**"), and may not be sold, transferred or assigned by



you in the absence of an effective registration statement under the Act or an exemption from the registration requirements of the Act. Accordingly, an appropriate restrictive legend shall be placed on the Shares.

(c) Not later than three (3) business days following the date of execution of this Agreement, the Company will: (i) file with the Securities and Exchange Commission, and cause to become effective, a Form S-8 registration statement to register for immediate public resale all of the Shares; and (ii) cause a stock certificate evidencing the Shares to be issued in the name of the Consultant to any affiliated entity of the Consultant designated by him.

(d) In the event that by September 7, 2010, the Consultant shall *not* have received a minimum of $225,000 in cash from one or more sales of the Shares (net of any selling commissions), the Company shall, by a date which shall be not later than September 10, 2010, either:

(i) pay to the Consultant in cash the difference between (A) $225,000, and (B) the actual amount(s) received in cash by Consultant from such sale(s) of the Shares; or

(ii) if the Consultant has elected not to sell all or any portion of the Shares, offer to repurchase any unsold Shares for a purchase price of $4.70 per share.

(e) In the event that by September 7, 2010, the Consultant shall not have received *in excess* of $225,000 in cash from one or more sales of the Shares (net of any selling commissions), the amount, if any, by which the net proceeds shall exceed $225,000 (the "*Excess*") shall be allocated to the Additional Shares of which 50% of such Excess shall represent a prepayment toward the monthly installments payable under the Repurchase Agreement.

(f) On or before September 7, 2010, the Consultant shall provide the Company with appropriate documentation reasonably acceptable to the Company to evidence any and all applicable sale(s) transactions involving the Shares. In such connection, the Consultant agrees that not more than 2,000 of the Shares shall be sold by him or it on each trading day prior to September 7, 2010 until such time as the average daily trading volume for Company ordinary shares shall exceed 100,000 shares per day; at which time this sale limitation shall be adjusted to equal a maximum of 10% of such daily trading volume.

(g) All payments by the Company to the Consultant under this Agreement shall be made by wire transfer of immediately available funds to a bank account designated by the Consultant.

3. **WAIVER OF CERTAIN INSTALLMENT PAYMENTS.**

(a) The parties hereto acknowledge that pursuant to the terms of a share repurchase agreement between the Company and Marseilles, dated April 8, 2010 (the "**Repurchase Agreement**"), the Company is obligated to pay Marseilles the sum of $75,000 per month until aggregate payments of $900,000 are made under such agreement. Subject at all times to the Company's satisfaction of all of the terms and conditions of this Agreement, Marseilles hereby waives the right to receive the three installment payments aggregating $225,000 that were and are due and payable for the months of July, August and September 2010. Commencing on October 8, 2010 and monthly thereafter on the 8th day of each month thereafter, the Company shall continue to make cash payments (by wire transfer of immediately available funds) of such $75,000 monthly installments until such time as the Consultant shall have received not less than an aggregate of $900,000 under the Repurchase Agreement and this Agreement.

 (b) It is expressly understood and agreed that the Consultant shall be entitled to receive and retain any amounts in excess of $900,000 that he or it receives pursuant to the terms of the Repurchase Agreement and this Agreement.

4. **TERM OF AGREEMENT.** The term of this Agreement shall commence as of the date first referenced herein (the "**Commencement Date**") and shall automatically terminate on September 30, 2010 (the "**Termination Date**"), unless such Termination Date shall be extended at the sole option of the Company upon such terms and conditions as shall be mutually satisfactory to the Company and the Consultant. The period from the Commencement Date to the Termination Date is hereinafter sometimes referred to as the "**Consulting Period.**"

5. **RELATIONSHIP BETWEEN PARTIES.**

 Throughout the term of the Consulting Period and thereafter, neither the Consultant nor any affiliate of the Consultant shall hold it or himself out to any third person, firm or entity, as an agent or representative of the Company or otherwise being authorized to act on behalf of the Company or any or any affiliate or subsidiary of the Company (collectively, the "**Company Group**"), nor shall the Consultant or any affiliate of the Consultant seek to bind any member of the Company Group to any agreement, undertaking, commitment or other obligation of any kind. A violation or attempted violation of the foregoing covenants, shall be grounds for immediate termination of this Agreement by the Company.

6. **CONFIDENTIALITY COVENANTS.** In consideration of the compensation and benefits to be paid or provided to the Consultant by the Company under this Agreement, the Consultant hereby covenants as follows:

 (a) <u>Confidentiality</u>.

  (i) During and following the Consulting Period, the Consultant will hold in confidence the Confidential Information (as defined herein) and will not disclose it outside the scope of this consultancy to any person or entity except with the specific prior written consent of the Company or except as otherwise expressly permitted by the terms of this Agreement.

  (ii) None of the foregoing obligations and restrictions applies to any part of the Confidential Information that the Consultant demonstrates was or became generally available to the public other than as a result of a disclosure by the Consultant.

 (b) For the purposes of this Section 6, "**Confidential Information**" shall mean any and all:

  (i) trade secrets concerning the business and affairs of the Company or Company Group, financial investment, lists of investments, business plans, data, know-how, designs, sketches, photographs, current, and planned research and development, current and planned financial products or services, or distribution methods and processes, investor or customer lists, current and anticipated market studies, and business plans;

  (ii) information concerning the business and affairs of the Company or Company Group which include historical financial statements, financial projections and budgets, historical and projected sales, capital spending budgets and plans, the names and backgrounds of key personnel, personnel training and techniques and materials, however documented; and



(iii) notes, analysis, compilations, studies, summaries, and other material prepared by or for the Company containing or based, in whole or in part, on any information included in the foregoing.

7. **EXISTING AGREEMENTS.** Except as expressly modified by Section 3 of this Agreement, all of the terms and conditions of the Separation Agreement and the Repurchase Agreement (collectively, the "**Existing Agreements**") shall remain in full force and effect, and all of the terms and conditions of the Existing Agreements are deemed for all purposes to be incorporated by this reference into this Agreement.

8. **BINDING EFFECT.** This Agreement shall extend to, shall inure to the benefit of and shall be binding upon all the parties hereto and upon all of their respective heirs, successors and representatives.

9. **ENTIRE AGREEMENT.**

(a) This Agreement contains the entire Agreement among the parties hereto with respect to the matters contemplated hereby and supersedes all prior agreements, whether oral or written, and undertakings between the parties with respect to such matters, including, without limitation, the Prior Agreement.

(b) This Agreement may not be amended, modified or terminated in whole or in part, except in writing, executed by each of the parties hereto.

10. **SEVERABILITY.** Should any part of any provision of this Agreement be declared invalid by a court of competent jurisdiction, such decision or determination shall not affect the validity of any remaining portion of such provision or any other provision and the remainder of the Agreement shall remain in full force and effect and shall be construed in all respects as if such invalid or unenforceable provision or portion thereof were not contained herein. In the event of a declaration of invalidity, the provision or portion thereof declared invalid shall not necessarily be invalidated in its entirety, but shall be observed and performed by the parties to the Agreement to the extent such provision is valid and enforceable.

11. **SECTION HEADINGS.** The section headings contained herein are for convenience of reference only and shall not be considered any part of the terms of this Agreement.

12. **CHOICE OF LAW.** This Agreement shall be interpreted and performed in accordance with the laws of the State of Florida, and the parties agree, notwithstanding the principles of conflicts of law, that the internal laws of the State of Florida shall govern and control in any proceeding in any forum and in any determination of the validity, interpretation, performance, and enforcement of this Agreement.

**[the balance of this page intentionally left blank - signature page follows**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, the date and year first above written.

GEROVA FINANCIAL GROUP, LTD.

By: _____
    Joseph J. Bianco, Chief Executive Officer

MARSEILLES CAPITAL LLC

By: _____
    Marshall Manley, Member and Manager

_____
MARSHALL MANLEY

- 5 -

# EXHIBIT "B"

## ASSIGNMENT AGREEMENT

Marshall Manley, as Managing Member of Marseilles Capital, LLC, a Florida limited liability company ("Assignor"), for the sum of ten dollars ($10.00) and other good and valuable consideration, the sufficiency of which is acknowledged, hereby assigns of all of Assignor's rights, title and interests that it now has, has ever had, or is entitled to receive in the future, to Marshall Manley, individually ("Assignee"), in that certain Consulting Agreement, by and between Gerova Financial Group, Ltd., Marseilles Capital, LLC, and Marshall Manley, individually, dated July 26, 2010. A true and correct copy of this Consulting Agreement is attached hereto as Exhibit "A" and incorporated by reference herein.

Dated this _11_ day of October, 2011.

**MARSEILLES CAPITAL, LLC**

BY: _____
Marshall Manley, Managing Member
Assignor

BY: _____
Marshall Manley, Individually
Assignee

I, Marshall Manley, hereby accept the assignment set forth above.

BY: _____
Marshall Manley, Individually
Assignee